UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Amy Jo Koopman,

        Plaintiff,

v.

The City of Robbinsdale; Christine
Allen, *individually and in her official
capacity*; Joshua Heasley, *individually
and in his official capacity*; and Nichole
Saba, *individually and in her official
capacity*,

        Defendants.

Civil Action No: _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

---

## I.    INTRODUCTION

1.    Hours after George Floyd's death, the Minneapolis Police Department issued a press release stating that Mr. Floyd had resisted officers trying to handcuff him, appeared to be in medical distress, and died after an ambulance brought him to the hospital. Thanks to bystander Darnella Frazier, who recorded what really happened, the world soon learned the truth. Her video of the fatal interaction between George Floyd and Minneapolis police officers sparked global protests for police accountability and led to the conviction of former officer Derek Chauvin for murder. Without Ms. Frazier's video, justice for George Floyd may have been impossible and Derek Chauvin may still be a police officer.

1

2.     George Floyd is one of 220 people killed by police in Minnesota since 2000—a disproportionate number of whom are Black. Plaintiff Amy Koopman (a white woman) knew some of their names, including Philando Castile and Jamar Clark. And these names rushed into her head when she saw Robbinsdale police officers, with guns drawn, order two Black men out of a car in August of 2018.

3.     Concerned for the safety of the two men and believing in police accountability, Koopman pulled over, got out of her car, and started recording the police on her phone. She spoke to the officers and never physically obstructed them or interfered with their actions. Yet, after the traffic stop concluded, officers criminally cited her for obstructing legal process, in violation of Minnesota Statute Section 609.50, subd. 1(2).

4.     Ms. Koopman challenged the criminal case against her. And 10 months later, a Hennepin County judge dismissed the case, finding no probable cause for the charge of obstruction of legal process.

5.     Ms. Koopman believes officers targeted and cited her for exercising her constitutional rights to speak and film police. She now brings this action against the officers and the City of Robbinsdale for violating her First and Fourth Amendment rights under the Constitution of the United States of America, pursuant to 42 U.S.C. § 1983, as well as her rights under the Minnesota Constitution, Article I, sections 3 and 10.

## II.     PARTIES

6.     Plaintiff Amy Jo Koopman is a resident of the City of Minneapolis, County of Hennepin, State of Minnesota.

2

7.      The City of Robbinsdale is a municipal corporation organized under the laws of the State of Minnesota and, at all times material herein, was the employer of Defendants Christine Allen, Joshua Heasley, and Nichole Saba.

8.      Defendant Christine Allen, at all times material herein, was a law enforcement officer employed by the City of Robbinsdale and was acting under color of law.

9.      Defendant Joshua Heasley, at all times material herein, was a law enforcement officer employed by the City of Robbinsdale and was acting under color of law.

10.     Defendant Nichole Saba, at all times material herein, was a law enforcement officer employed by the City of Robbinsdale and was acting under color of law.

### III.    JURISDICTION

11.     This action is brought pursuant to 42 U.S.C. § 1983, the First and Fourth Amendments to the United States Constitution, as made applicable to the states through the Fourteenth Amendment, and Article I, sections 3 and 10 of the Minnesota Constitution. This Court has original jurisdiction, founded upon 42 U.S.C. § 1983, the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to claims occurred in this district.

## IV.   FACTS

13.     On August 16, 2018, at 5:00 p.m., Robbinsdale Police Officers Allen, Heasley, and Saba stopped a car owned and driven by Ronald Harris at 36th Avenue North in Robbinsdale, Minnesota.

14.     Mr. Harris and his front-seat passenger are Black and were unarmed.

15.     After pulling over the car, the officers got out of their squad cars. Their guns were drawn and pointed at Mr. Harris and his passenger.

16.     Ms. Koopman saw the alarming scene as she was driving by. Given the history of police violence against Black men, Ms. Koopman was concerned. She pulled over, exited her car, and began filming, streaming the interaction on Facebook Live.

17.     Ms. Koopman filmed the stop while standing on the far side of Halifax Avenue, at a distance of approximately 40 yards from Mr. Harris's car. She did not move towards the stopped car or otherwise seek to intervene with the stop.

18.     Ms. Koopman was not alone: a group of people had gathered on the sidewalk to witness the stop.

19.     Within two minutes of stopping Mr. Harris, Officers Allen and Heasley ordered Mr. Harris to "put your hands in the air" and "get out of the car."

20.     Mr. Harris complied, and three minutes after he was pulled over, he was in police custody.

21.     While Officer Heasley was issuing orders to Mr. Harris, he yelled to Ms. Koopman and the other people on the sidewalk, "How about you guys back up when we have guns out?"

22.     Ms. Koopman replied, saying: "How about put the guns away?"

23.     Officer Heasley responded: "No, we're not."

24.     Concerned that the officers still had their guns drawn despite the fact that Mr. Harris was complying with their orders, Ms. Koopman stated, "His hands are up."

25.     Officer Heasley again engaged Ms. Koopman and the other observers, stating: "You can record all you want, but just know you're downrange from guns, so be smart about it."

26.     Ms. Koopman replied, "Just don't shoot."

27.     Up to this point, all three of Ms. Koopman's comments were in direct response to statements made by Officer Heasley to Ms. Koopman and the other observers.

28.     Throughout this brief interaction with Ms. Koopman, Officers Allen and Heasley continued to direct Mr. Harris with their guns drawn, and Mr. Harris complied with their instructions.

29.     Ms. Koopman did not delay officers taking Mr. Harris into custody.

30.     Ms. Koopman did not use fighting words.

31.     At 5:03 p.m., Officer Heasley directed the passenger to exit the vehicle with his hands up. Then, as was his regular practice, he repeated this same command three seconds later.

32.     Ms. Koopman provided a brief description of the passenger's activity: "He's opening the door." This was the first and only time during the stop that Ms. Koopman spoke without first being spoken to by an officer.

33.     Only 26 seconds elapsed between Officer Heasley's initial command and the passenger exiting the vehicle. By 5:03:26 p.m., the passenger had exited the vehicle and begun to walk backwards, per Officer Heasley's instructions.

34.     During those 26 seconds, four cars safely and unimpeded by officers turned from Halifax Avenue onto 36th Avenue, passing between the stopped vehicle and Ms. Koopman. At no time during the stop did officers block or otherwise restrict the flow of traffic for vehicles passing between the stopped vehicle and Ms. Koopman.

35.     Officer Allen arrested the passenger at 5:03:40, less than one minute after Officer Heasley's initial command to the passenger to exit the vehicle.

36.     At approximately 5:05 p.m., Officers Heasley and Saba cleared the stopped vehicle.

37.     At some point during the traffic stop, Officers Allen, Heasley, and Saba decided to issue Ms. Koopman a criminal citation for obstructing legal process under Minn. Stat. § 609.50, subd. 1(2).

38.     Officers Allen and Saba approached Ms. Koopman, threatening to detain her in their squad cars or at the police station if she did not stop recording and produce identification.

39.     During a lengthy conversation, Officer Saba interrogated Ms. Koopman about the names of police officers who have been killed in the line of duty, arguing that it was more than the number of Black men killed by police officers.

40.     The officers then issued Ms. Koopman a criminal citation for obstructing legal process. While the officers were speaking to Ms. Koopman, she did not feel free to leave.

41.     Even though there were 7-10 other people standing on the sidewalk with her, Ms. Koopman was the only person issued a criminal citation.

42.     In his police report about this incident, Officer Allen wrote that Mr. Harris and his passenger reported that Ms. Koopman had distracted them and prevented them from focusing on the officers' commands.

43.     But the squad-camera footage of the incident contains no such statements. And Mr. Harris signed a sworn statement, filed in Ms. Koopman's criminal case, stating that Ms. Koopman had not distracted him or prevented him from focusing on the officers' commands, and that he never made such a statement to police.

44.     After issuing Ms. Koopman's citation, Officers Allen, Heasley, and Saba had a conversation in which one or more of the officers referred to the group of onlookers as "morons." Officer Saba, when relaying the conversation she had with Ms. Koopman to the other officers, stated: "They're assuming shit . . . . It's ridiculous."

45.     Officers Allen and Saba later searched for Ms. Koopman on Facebook and found the clip of the incident she recorded. In their police report about Ms. Koopman, Officer Saba also wrote that the Facebook video and comments made by Ms. Koopman and others about the video were downloaded and saved at the Robbinsdale Police Department.

46.     On August 17, 2018, Ms. Koopman was directed to appear in court on the citation for obstruction of legal process under Minnesota Statute § 609.50, subd. 1(2).

47.     Minnesota Statute § 609.50, subd. 1(2) "clearly prohibits only intentional physical obstruction or interference with a peace officer in the performance of his duties." *State v. Krawsky*, 426 N.W.2d 875, 878 (Minn. 1988).

48.     Ms. Koopman pleaded "not guilty" and challenged the criminal charge against her.

49.     On January 31, 2019, Judge Susan Robiner of the Hennepin County District Court of Minnesota held an evidentiary hearing on Ms. Koopman's motion to dismiss the charge against her for lack of probable cause.

50.     Officers Heasley and Saba testified at the hearing, which lasted nearly two hours. And in a highly unusual move, approximately 5-10 Robbinsdale police officers attended the hearing in uniform and sat together in the courtroom as a show of solidarity for the officers.

51.     On June 11, 2019, Judge Susan Robiner granted Ms. Koopman's motion to dismiss for lack of probable cause. The court found Ms. Koopman "engaged with the officers during the traffic stop, but [that] no reasonable officer could construe her shouting as 'physically obstructing or interfering' in the performance of their duties." Ex. A (Findings of Fact and Order at 14, *State v. Ms. Koopman,* No. 27-CR-18-20663 (D. Minn. June 11, 2019)).

52.     In reaching that conclusion, the court cited *Hoyland v. McMenomy*, 869 F.3d 644, 654 (8th Cir. 2017), which held that:

(1)  Minnesota Statute § 609.50, subd. 1(2) does not apply to an individual's video recording or criticizing of police officers;

(2)  that these activities were protected under the First Amendment; and

(3)  that it was not objectively reasonable for police officers to have charged Hoyland with obstructing legal process for said activities. [Exhibit 1]

53.    Ms. Koopman acted lawfully in recording police conduct and speaking to the Robbinsdale officers. Yet, she was harmed by Defendants' actions. She was shocked when she was criminally cited. And while the charge was pending against her, she suffered emotional distress, anger, embarrassment and humiliation.

54.    As a community activist and seminarian, Ms. Koopman remains concerned about police-involved shootings and plans to continue to exercise her right to film and criticize police officers in the course of their official duties, though Defendants' conduct will have a chilling effect on Ms. Koopman's future decisions to engage in such constitutionally-protected action.

55.    Ms. Koopman reasonably fears further retaliation if she continues to film and criticize police or participate in constitutionally-protected activity.

56.    And a misdemeanor charge is enough to chill a person of ordinary firmness from engaging in a constitutionally-protected activity.

57.    Ms. Koopman lives in North Minneapolis, very near the border of Minneapolis and Robbinsdale. She is in Robbinsdale every day, passing through it on her exercise route, and going there to grocery shop and run other errands. During these times, Ms. Koopman travels along main thoroughfares and on heavily-trafficked streets where,

9

according to Robbinsdale's crime map produced by LexisNexis, police issue criminal and non-criminal citations in public areas. In a few weeks, Ms. Koopman will start a seminary internship, where she will work directly with congregations in Robbinsdale.

58.     Ms. Koopman has also seen multiple Robbinsdale Police squad cars in her Minneapolis neighborhood.

59.     And Robbinsdale Police have the authority to—and in fact do—make traffic stops in North Minneapolis.

60.     Any reasonable and properly trained police officer would have known that a violation of Minnesota Statutes § 609.50, subd. 1(2), occurs when an individual is "physically obstructing or interfering in the performance of their duties." Such an officer would also know that recording police conduct and speaking to police are activities protected by the First Amendment.

61.     Yet, this is not the first time Robbinsdale police officers—and even Officers Heasley and Allen specifically—have issued criminal citations for obstruction of legal process even though the individual was not physically interfering or obstructing them.

62.     According to publicly-available incident reports, in 2017, Robbinsdale Police Sergeant Christopher Woodhall criminally cited a woman for obstructing legal process after she yelled at officers performing field-sobriety tests on her boyfriend. Sergeant Woodhall's police report provides no evidence that the woman physically obstructed or interfered with the performance of his duties, and the citation was dismissed after the woman completed the terms of an agreement to suspend prosecution without an admission of guilt.

63.   Also in 2017, Robbinsdale police officers cited a driver for illegal window tint and obstructing legal process after the driver filmed officers during a traffic stop. The driver's attorney filed a notice of motion to challenge probable cause for the obstruction count. The prosecutor dismissed the count, and the driver received only a petty misdemeanor for tinted windows.

64.   In 2018, prior to the incident with Ms. Koopman, Sergeant Christopher Woodhall ordered that a passenger in a felony stop be arrested for obstruction of legal process, though the police report shows that the passenger complied with the officers' questions and demands and makes no mention of the passenger physically obstructing or interfering with police. The charge was dismissed a month later.

65.   Also in 2018, Officer Allen arrested a 19-year-old woman for obstruction of legal process for yelling and "attempting to interfere" with officers—including Officers Heasley and Allen—who arrested her boyfriend. Neither Officer Allen's nor Officer Heasley's police reports describe the woman physically interfering with the arrest. The case was dismissed after the woman completed conditions of an agreement with the State.

66.   The incident with Ms. Koopman, and the above examples, demonstrate the City of Robbinsdale's deliberate indifference to individuals' First Amendment rights, as they show: a continuing, widespread, and persistent pattern of Robbinsdale police officers violating individuals' First Amendment rights; and deliberate indifference to or tacit authorization of such conduct by policymakers at the Robbinsdale Police Department. The City's deliberate indifference was the moving force behind the violation of Ms. Koopman's rights.

67.     The need to train police officers on an individual's constitutional right to film and speak to police is obvious given the clearly established case law. Indeed, the Minneapolis Police Department devotes an entire section of its policy and procedure manual to an individual's right to record police. That training includes the prohibition of officers from, among other things, "[d]etain[ing] that person for recording or investigation of a recording," and "threaten[ing], intimidat[ing] or otherwise discourag[ing] an individual from recording."[1]

68.     The City of Robbinsdale, however, has reported that it does not have specific materials related to the enforceability of Minnesota Statute § 609.50, subd. 1(2), including policies, manuals, handbooks, or guidance.

69.     The City of Robbinsdale has an obligation to properly train its police officers on the elements of criminal charges, including obstructing legal process, and the constitutional rights of individuals interacting with law enforcement. The City failed to train its officers that only physical interference and obstruction are unlawful, and that an individual's exercise of her First Amendment rights is not obstruction. As a result of this failure, it was highly likely that Robbinsdale police would unconstitutionally and improperly cite people for recording and speaking to police. Furthermore, given the multiple incidents in which citations for obstruction issued by Robbinsdale police officers

---

[1]     *See* The Minneapolis Police Department Policy and Procedure Manual, Section 9-202 (July 12, 2021), https://www.minneapolismn.gov/media/-www-content-assets/documents/MPD-Policy-and-Procedure-Manual.pdf.

were dismissed, and the clearly-established law, the necessity for such training would have been obvious.

70.     The City of Robbinsdale has an obligation to supervise its police officers and ensure that they comply with the First and Fourth Amendments. The City did not properly supervise police officers to ensure that they complied with the guarantees of these constitutional provisions by not unlawfully citing or arresting people for obstructing justice who were exercising their constitutional rights. For example, rather than instructing Robbinsdale police officers on the law, then Robbinsdale Police Sergeant Ryan Seibert approved the officers' citations of Ms. Koopman and the individual described in paragraph 63, and Sergeant Anthony Phenow approved the reports of Officers Heasley and Allen as described in paragraph 65. And Sergeant Woodhall, another supervisory officer, caused the two individuals described in paragraphs 62 and 64 to be cited for obstruction of legal process rather than properly advise his subordinates on the legal elements of the charge.

## V.     LEGAL CLAIMS

### COUNT I

**Retaliation for Activities Protected by the First Amendment of the United States Constitution, under 42 U.S.C. § 1983**
*Against All Defendants*

71.     Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

72.     Video recording police officers in the course of their official duties is a protected activity under the First Amendment to the United States Constitution.

73.     Engaging with, and even criticizing, police officers in the course of their official duties is a protected activity under the First Amendment to the United States Constitution.

74.     When she interacted with Robbinsdale Police Officers Allen, Heasley, and Saba on August 16, 2018, Ms. Koopman was engaging in constitutionally-protected activities.

75.     Because of this interaction, Ms. Koopman was charged with obstructing legal process under Minn. Stat. § 609.50, subd. 1(2).

76.     Obstructing legal process under Minn. Stat. § 609.50, subd. 1(2), is a misdemeanor charge.

77.     A misdemeanor charge is enough to chill a person of ordinary firmness from engaging in a constitutionally-protected activity.

78.     Ms. Koopman would not have been charged with obstructing legal process had she not engaged in the constitutionally-protected activities of video recording and engaging with police officers.

79.     The officers' decision to charge Ms. Koopman with obstructing legal process was prompted by retaliatory animus.

80.     Officers Allen, Heasley, and Saba lacked even arguable probable cause to charge Ms. Koopman.

81.     The right to be free from retaliation for speech-related activity protected by the First Amendment is clearly established under the Constitution.

82.     Officers Allen, Heasley, and Saba are not entitled to the protection of qualified immunity for this claim.

83.     At all times relevant to this cause of action, Officers Allen, Heasley, and Saba were acting under color of law and within the scope of their employment with the City of Robbinsdale.

84.     As a result of the actions of Defendants, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

## COUNT II

**Unlawful Seizure in Violation of the Fourth Amendment of the United States, Constitution, under 42 U.S.C. § 1983**
***Against Defendants City of Robbinsdale, Christine Allen, and Nichole Saba***

85.     Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

86.     When the Robbinsdale Police Officers approached Ms. Koopman, ordered her to identify herself, and issued her a citation for obstructing legal process, Ms. Koopman was seized within the meaning of the Fourth Amendment.

87.     The officers' seizure of Ms. Koopman for engaging in a constitutionally-protected activity was unreasonable and not supported by probable cause or reasonable suspicion.

88.     The right to be free from unreasonable seizure is clearly established under the United States Constitution.

89.     Officers Allen and Saba are not entitled to the protection of qualified immunity for this claim.

90.     At all times relevant to this cause of action, Officers Allen and Saba were acting under color of law and within the scope of their employment with the City of Robbinsdale.

91.     As a result of the actions of Officers Allen and Saba, and the City of Robbinsdale, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

## COUNT III

### Municipal Liability for Federal Constitutional Claims
### *Against the City of Robbinsdale*

92.     Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

93.     The violations of Ms. Koopman's constitutional rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, Ms. Koopman's injuries, and/or the conduct of Officers Allen, Heasley, and/or Saba were directly and proximately caused by the actions and/or inaction of the City of Robbinsdale, which has encouraged, tolerated, and ratified, and has been deliberately indifferent to policies, patterns, practices, and customs related to the unconstitutional enforcement of Minn. Stat. § 609.50.

94.     The violations of Ms. Koopman's constitutional rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, Ms. Koopman's injuries, and/or the conduct of Officers Allen, Heasley, and/or Saba were directly and proximately caused by the actions and/or inaction of the City of Robbinsdale, which has been

deliberately indifferent to the need for training, and supervision related to the unconstitutional enforcement of Minn. Stat. § 609.50.

95.    Video recording police officers in the course of their official duties is a protected activity under the First Amendment to the United States Constitution.

96.    Engaging with, and even criticizing, police officers in the course of their official duties is a protected activity under the First Amendment to the United States Constitution.

97.    When she interacted with Robbinsdale Police Officers Allen, Heasley, and Saba on August 16, 2018, Ms. Koopman was engaging in constitutionally-protected activities.

98.    Because of this interaction, Ms. Koopman was charged with obstructing legal process under Minn. Stat. § 609.50, subd. 1(2).

99.    Obstructing legal process under Minn. Stat. § 609.50, subd. 1(2) is a misdemeanor charge.

100.    A misdemeanor charge is enough to chill a person of ordinary firmness from engaging in a constitutionally-protected activity.

101.    Ms. Koopman would not have been charged with obstructing legal process had she not engaged in the constitutionally-protected activities of video recording and engaging with police officers.

102.    Defendants' decision to charge and prosecute Ms. Koopman with obstructing legal process was prompted by retaliatory animus.

103. Officers Allen, Heasley, and Saba lacked even arguable probable cause to charge Ms. Koopman.

104. The right to be free from retaliation for speech-related activity protected by the First Amendment is clearly established under the Constitution.

105. When the Robbinsdale Police Officers approached Ms. Koopman, ordered her to identify herself, and issued her a citation for obstructing legal process, Ms. Koopman was seized within the meaning of the Fourth Amendment.

106. The officers' seizure of Ms. Koopman for engaging in a constitutionally-protected activity was unreasonable and not supported by probable cause or reasonable suspicion.

107. The right to be free from unreasonable seizure is clearly established under the United States Constitution.

108. At all times relevant to this cause of action, Officers Allen, Heasley, and Saba were acting under color of law and within the scope of their employment with the City of Robbinsdale.

109. As a result of the actions of the City of Robbinsdale, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

## COUNT IV

### Retaliation for Activities Protected by Article I, Section 3 of the Minnesota Constitution
### *Against All Defendants*

110.   Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

111.   Video recording police officers in the course of their official duties is a protected activity under Article I, Section 3 of the Minnesota Constitution.

112.   Engaging with, and even criticizing, police officers in the course of their official duties is a protected activity under Article I, Section 3 of the Minnesota Constitution.

113.   When she interacted with Robbinsdale Police Officers Allen, Heasley, and Saba on August 16, 2018, Ms. Koopman was engaging in constitutionally-protected activities.

114.   Because of this interaction, Ms. Koopman was charged with obstructing legal process under Minn. Stat. § 609.50, subd. 1(2).

115.   Obstructing legal process under Minn. Stat. § 609.50, subd. 1(2) is a misdemeanor charge.

116.   A misdemeanor charge is enough to chill a person of ordinary firmness from engaging in a constitutionally-protected activity.

117.    Ms. Koopman would not have been charged with obstructing legal process had she not engaged in the constitutionally-protected activities of video recording and engaging with police officers.

118.    The officers' decision to charge Ms. Koopman with obstructing legal process was prompted by retaliatory animus.

119.    Officers Allen, Heasley, and Saba lacked even arguable probable cause to charge Ms. Koopman.

120.    At all times relevant to this cause of action, Officers Allen, Heasley, and Saba were acting under color of law and within the scope of their employment with the City of Robbinsdale.

121.    As a result of the actions of the City of Robbinsdale, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

## COUNT V

### Unlawful Seizure in Violation of Article I, Section 10
### of the Minnesota Constitution
### *Against Defendants City of Robbinsdale, Christine Allen, and Nichole Saba*

122.    Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

123.    When the Robbinsdale Police Officers approached Ms. Koopman, ordered her to identify herself, and issued her a citation for obstructing legal process, Ms. Koopman was seized within the meaning of Article I, Section 10 of the Minnesota Constitution.

124.   The officers' seizure of Ms. Koopman for engaging in a constitutionally-protected activity was unreasonable and not supported by probable cause or reasonable suspicion.

125.   The right to be free from unreasonable seizures is established under the Article I, Section 10 of the Minnesota Constitution.

126.   At all times relevant to this cause of action, Officers Allen and Saba were acting under color of law and within the scope of their employment with the City of Robbinsdale.

127.   As a result of the actions of Officers Allen and Saba, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

128.   Neither the City of Robbinsdale nor Officers Allen and Saba are entitled to the protection of state immunities for this claim.

129.   As a result of the actions of Officers Allen and Saba, and the City of Robbinsdale, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

## COUNT VI

### Malicious Prosecution
### *Against All Defendants*

130.   Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

131.   Defendants willfully, wantonly, and with evil motive, maliciously subjected Plaintiff to criminal prosecution, initiated without probable cause and with malice, the result of which ended in Plaintiff's favor.

132.   Neither the City of Robbinsdale nor Officers Allen, Heasley, and Saba are entitled to the protection of state immunities for this claim.

133.   As a result of Defendants' willful and wanton intentional malicious prosecution of Ms. Koopman done with evil motive, Ms. Koopman sustained injuries and incurred damages as set forth in paragraph 53 above.

## VI.   JURY DEMAND

Plaintiff demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure

## VII.   PRAYER FOR RELIEF

Plaintiff hereby demands a jury trial and respectfully requests that the Court grant the following relief:

(a)   An order declaring that Defendants' actions, described herein, violate the First and Fourth Amendments to the United States Constitution, as well as Article I, sections 3 and 10 of the Minnesota Constitution;

(b)   An order declaring unlawful Defendant City of Robbinsdale's policies, patterns, practices, and customs related to its peace officers issuing citations under Minn. Stat. § 609.50 to individuals for conduct not physically obstructing or interfering with peace officers in the performance of their duties;

(c)     An order declaring unlawful Defendant City of Robbinsdale's failure to properly and sufficiently train, supervise, investigate, and discipline its peace officers about enforcement of Minn. Stat. § 609.50;

(d)     An order enjoining Defendants and their employees, agents, and any and all persons acting in concert with them from further violating the First and Fourth Amendments to the United States Constitution, and Article I, sections 3 and 10 of the Minnesota Constitution, by engaging in the same or similar conduct described herein;

(e)     An order awarding damages in an amount to be proven at trial for violations of constitutionally-protected rights that have been clearly established;

(f)     An order awarding punitive damages in an amount to be proven at trial for violations of constitutionally-protected rights that have been clearly established;

(g)     An order awarding Plaintiff's reasonable attorneys' fees as well as litigation expenses and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

(h)     An order awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 17, 2021

**FORSGREN FISHER MCCALMONT
DEMAREA TYSVER LLP**

s/ *Virginia McCalmont*
Virginia R. McCalmont, Reg. No. 0399496
Caitlinrose H. Fisher, Reg. No. 0398358
Capella Tower
225 South 6th Street, Suite 1750
Minneapolis, MN 55402
(612) 474-3300
vmccalmont@forsgrenfisher.com
cfisher@forsgrenfisher.com

**AMERICAN CIVIL LIBERTIES UNION
OF MINNESOTA**
Teresa J. Nelson, Reg. No. 0269736
David P. McKinney, Reg. No. 039236
Clare A. Diegel, Reg. No. 0400758
P.O. Box 14720
Minneapolis, Minnesota 55414
651-645-4097
tnelson@aclu-mn.org
dmckinney@aclu-mn.org
cdiegel@aclu-mn.org

**BASS LAW FIRM LLC**
Howard Bass, Reg. No. 0189340
3000 County Road 42 West, Suite 310
Burnsville, Minnesota 55337
952-224-0182
hbass@thebasslawfirm.com