# EXHIBIT 1

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

State of Minnesota,

    Plaintiff,                        **FINDINGS OF FACT AND ORDER**

v.

                                     Judge Susan M. Robiner

Amy Jo Koopman,                    Court File No. 27-CR-18-20663

    Defendant.

On January 31, 2019, the above-entitled matter came on for a hearing before the Honorable Susan M. Robiner upon Defendant's motion to dismiss. David P. McKinney, Esq. and Howard I. Bass, Esq. appeared on behalf of Defendant. Wendy A. Murphy, Esq. and Thomas J. Weidner, Esq. appeared on behalf of Plaintiff. Two witnesses, Robbinsdale Police Officers Joshua Heasley and Nichole Saba, testified at the hearing. Supplemental briefing was requested and granted, and this Court took the case under advisement as of March 28, 2019.

Based upon the arguments of counsel and all the files, records, and proceedings herein, the Court makes the following:

## FINDINGS OF FACT

1. On August 16, 2018, Officer Heasley initiated a felony traffic stop on 36th Avenue North in Robbinsdale, Minnesota.

2. Pursuant to department policy, Officer Heasley exited his squad vehicle, drew his gun, and began issuing commands to the occupants of the stopped car. Officer Saba and Officer Christine Allen joined him at the scene with their guns drawn.

**Exhibit 1**

3. Defendant stood in a small crowd of people at the intersection of 36th Avenue North and Halifax Avenue, approximately 40 yards away from the officers. Defendant had her cellphone out and began recording the traffic stop.

4. Officer Heasley advised the crowd: "How about you guys back up while we have guns out?"

5. Defendant answered: "How about put the guns away?"

6. Officer Heasley yelled: "No, we're not."

7. Defendant responded: "His hands are up."

8. Officer Heasley shouted: "You can record all you want, but just know you're downrange from guns, so be smart about it."

9. Defendant stated: "Just don't shoot."

10. Later, when Officer Heasley instructed the car's passenger to get out of the car and walk backward, Defendant said: "He's opening the door."

11. The entire felony traffic stop, from start to finish, took less than five minutes.

12. Officer Heasley never directed Defendant to move from her location or stop filming the traffic stop.

13. Throughout the interaction, several cars drove through the intersection of 36th Avenue North and Halifax Avenue, directly between the officers and Defendant.

14. After concluding the stop, the officers issued a citation to Defendant for obstruction of legal process under Minn. Stat. § 609.50.

15. At the hearing, Officer Heasley testified that Defendant's remarks took his attention away from the car's occupants. He testified that Defendant presented a risk of being shot because she was in his line of fire.

16. However, Officer Heasley also noted that he accomplished the arrest quickly, and any delay attributed to Defendant amounted to a matter of seconds.

## **CONCLUSIONS OF LAW**

1. Defendant challenges probable cause in this case, arguing that there is no probable cause to find she obstructed legal process under Minn. Stat. § 609.50.

2. Because this Court agrees with Defendant regarding the State's lack of probable cause, and because "our precedent recognizes that we resolve cases without reaching constitutional issues whenever possible," the constitutional issues raised by Defendant will not be addressed. *Leiendecker v. Asian Women United of Minnesota*, 895 N.W.2d 623, 638 (Minn. 2017).

3. In *State v. Lopez*, the Minnesota Supreme Court held that:

   > A motion to dismiss for lack of probable cause should be denied where "the facts appearing in the record, including reliable hearsay, would preclude the granting of a motion for a directed verdict of acquittal if proved at trial." *Florence*, 239 N.W.2d at 903. In other words, if the facts before the district court "present a fact question for the jury's determination" on each element of the crime charged, the charge will not be dismissed for lack of probable cause. *See State v. Slaughter*, 691 N.W.2d 70, 74–75 (Minn.2005).

   778 N.W.2d 700, 703–04 (Minn. 2010).

4. In essence, when evaluating a probable cause challenge, the district court must address a fundamental question: "Given the facts disclosed by the record, is it fair and reasonable… to require the defendant to stand trial?" *State v. Florence*, 239 N.W.2d 892, 902 (Minn. 1976), *holding modified by State v. Rud*, 359 N.W.2d 573 (Minn. 1984).

5. Here, this Court finds that it is not fair and reasonable to require Defendant to stand trial because she did not physically obstruct, resist, or interfere with a peace officer engaged in the performance of official duties. *See* Minn. Stat. § 609.50.

3

6. Minn. Stat. § 609.50 reads in relevant part:

   Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:
   …
   (2) obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties;
   …

7. In *State v. Krawsky*, 426 N.W.2d 875, 879 (Minn. 1988), the Minnesota Supreme Court held that Minn. Stat. § 609.50 is not unconstitutionally vague or overbroad on its face. In doing so, however, the court noted: "As we interpret the statute, the statute clearly prohibits only intentional physical obstruction or interference with a peace officer in the performance of his duties." *Id.* at 878.

8. The State argues that the facts in this case parallel those in *State v. Occhino*, 572 N.W.2d 316 (Minn. Ct. App. 1997), where the Minnesota Court of Appeals upheld a jury verdict convicting the defendant of obstructing legal process. In that case, the defendant entered the desk area of the Duluth Police Department and began asking Officer Pauly about a 1991 arrest in which he claimed he was falsely accused of a crime. *Id.* at 318. The defendant ignored Officer Pauly's repeated requests for him to leave, resulting in Officer Pauly's inability to answer 911 calls and respond to requests from police officers on patrol. *Id.* The defendant then began to physically resist Officer Pauly by swinging his arm and knocking her hand away, striking his body against her. *Id.* The Minnesota Court of Appeals held that:

   Based on the record, it is clear that Occhino intentionally ignored Officer Pauly's legitimate request to stop interrupting her; instead, he continued his loud and repetitive interruptions knowing that it was disruptive to her and inimical to her public duties. The jury reasonably concluded Occhino's intentional repeated verbal interruptions exceeded ordinary verbal criticism of the police and rose to the unlawful level in which his words

4

      had the effect of physically interfering with Officer Pauly's performance of her official duties.

*Id.* at 320–21.

9. However, this Court believes the facts at bar align more closely with those in *State v. Tomlin*, 622 N.W.2d 546 (Minn. 2001) and closer still with those in *Hoyland v. McMenomy*, 869 F.3d 644 (8th Cir. 2017).

10. In *State v. Tomlin*, police officers charged the defendant with obstruction of legal process after he lied and interrupted the officers' activities during their investigation of a hit-and-run accident. 622 N.W.2d at 549. "Although *Krawsky* mentions in dicta that some verbal conduct such as 'fighting words' may rise to the level of physical conduct, we do not believe Tomlin's conduct rises to that level." *Id.* The Minnesota Supreme Court reversed the defendant's conviction under Minn. Stat. § 609.50 due to lack of sufficient evidence, holding: "All of these false statements may have lengthened the time in which it took the police to apprehend Soderholm and Grussendorf, but these statements did not physically prevent or obstruct the police from trying to obtain the evidence." *Id.* at 549.

11. In *Hoyland v. McMenomy*, 869 F.3d 644 (8th Cir. 2017), police officers attempted to pull over a vehicle by activating their emergency lights. Instead of stopping, the vehicle's driver continued driving, ultimately pulling into the driveway of a house owned by the defendant. *Id.* at 649. Officers drew their weapons and began ordering the driver and passenger to exit the vehicle. *Id.* The commotion woke up the defendant, who was sleeping inside his house. *Id.* The defendant retrieved a cell phone to record the scene and stood in his doorway, approximately 30 to 40 feet away from the officers. *Id.* The defendant began screaming at the officers when he realized his wife was the passenger in the vehicle. *Id.* The defendant shouted, "You are in my yard!" and "What is this, a DWI

5

stop, and you guys are doing this? Are you kidding me?" *Id.* at 649-50. He demanded the officers do their jobs "the right way" and alerted officers to his wife's disability. *Id.* at 650. The officers arrested the defendant and issued him a citation for obstruction of legal process. *Id.* The defendant then challenged the obstruction charge in district court, where a judge agreed that the officers did not have probable cause to arrest the defendant and dismissed the charge. *Id.* The defendant appealed the district court's denial of qualified immunity on his First and Fourth Amendment claims. *Id.* at 651. In analyzing the reasonableness of the defendant's arrest, the Eighth Circuit held that "under Minnesota law, it was not objectively reasonable for these officers to believe they had probable cause to arrest Hoyland for obstruction." *Id.* at 653.

12. While not binding, the Eighth Circuit's analysis is persuasive:

> Here, the only impact Hoyland had on the detention of Christina was to delay it by at most a couple of minutes. He did not physically obstruct the officers or engage in verbal conduct that physically obstructed the officers.... As Minnesota law makes abundantly clear, obstruction must be either physical obstruction or verbal conduct, such as fighting words, that has the effect of physically obstructing officers in the performance of their duties. Nowhere in Minnesota law does mere physical presence at a distance constitute obstruction. So arresting Hoyland for obstruction due to his continued presence in his doorway was unreasonable under state law. Even when we consider his verbal conduct, no reasonable officer could construe his shouting as "physically obstructing or interfering" in the officers' performance of their duties.

*Hoyland v. McMenomy*, 869 F.3d 644, 654 (8th Cir. 2017).

13. The behavior of Defendant in this case did not rise to the level of behavior present in *State v. Occhino*. For one, Defendant stood approximately 40 yards away from the officers at all times, compared to Occhino's close proximity and physical contact with an officer. Additionally, Defendant did not physically obstruct the officers from completing

6

their task at hand— namely, stopping and arresting the car's occupants— in the way that Occhino obstructed an officer from answering 911 calls and responding to other officers.

14. Instead, Defendant's behavior most closely resembles that of the defendant in *Hoyland*. Defendant engaged with the officers during the traffic stop, but no reasonable officer could construe her shouting as "physically obstructing or interfering" in the performance of their duties. *See Hoyland*, 869 F.3d at 654. At most, her words delayed the stop by a matter of seconds, as Officer Heasley testified. The fact that the officers' had their guns drawn, like the officers in *Hoyland*, did not make Defendant's continued presence unreasonable.

15. Accordingly, as no fact questions remain for the jury's determination, the charge must be dismissed for lack of probable cause. *See Slaughter*, 691 N.W.2d at 74–75.

## ORDER

1. For the reasons set forth above, Defendant's motion to dismiss is GRANTED.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Date: June 11, 2019

Susan M. Robiner
Judge of District Court

7